## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

HANFORD TANK DISPOSITION ALLIANCE,
LLC,

               Plaintiff,

      v.

UNITED STATES OF AMERICA,

              Defendant**.**

Case No. _____

███████████████

## SEALED COMPLAINT

Plaintiff, Hanford Tank Disposition Alliance, LLC ("HTDA"), through its undersigned counsel, states and alleges as follows:

## NATURE OF THE ACTION

1. This is a post-award bid protest seeking declaratory judgment and permanent injunctive relief against the United States, acting through the Department of Energy ("DOE").[1]

2. This bid protest challenges the DOE's award of the Hanford Integrated Tank Disposition Contract ("ITDC") to Hanford Tank Waste Operations & Closure, LLC ("H2C") under Request for Proposal No. DE-SOL-89303321REM000084 ("RFP" or "Solicitation"). ITDC is an Indefinite Delivery Indefinite Quantity contract ("IDIQ") with a maximum value of $45 billion over a 10-year ordering period. The goal of this contract is to complete the safe cleanup of the

---

[1] On May 8, 2023, the Department of Justice confirmed that the DOE would voluntarily stay performance of the ITDC pending resolution of this bid protest. Accordingly, HTDA has not moved the Court for a Temporary Restraining Order or Preliminary Injunction at this time.

███████████████
███████████████

radioactive waste left behind after decades of nuclear weapons production at the Hanford Site in southeastern Washington State.  The ITDC effort is anticipated to include operation of tank farm facilities, including single-shell tank waste retrieval and closure, and operation of the Waste Treatment and Immobilization Plant.  The contract will also include core functions such as project management; environment, safety, health, and quality; security and emergency services; and business performance requirements.

3.    Only two offerors competed for this contract:  HTDA and H2C.  █████████



███████████████████████████████████████████████████████

█████████████████████████████████████████, numerous material and prejudicial evaluation errors skewed the best value source selection decision in H2C's favor.

4.    First, the DOE failed to ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

5.    Second, the DOE improperly assessed H2C an Outstanding rating under Factor 1 despite several of its proposed key personnel lacking recent and relevant experience.

6.    Third, the DOE inconsistently applied the evaluation criteria across past performance references under Factor 2 and, as a result, ████████████████████

████████████████████████████████

7.    Fourth, the DOE unreasonably assessed H2C a Good rating under Factor 2 because it failed to sufficiently consider the widely publicized safety, performance, and security issues that have plagued BWX Technology, Inc.'s ("BWXT") performance under multiple contracts,

including a recent personnel fatality and numerous Nuclear Regulatory Commission ("NRC") and Occupational Safety and Health Administration ("OSHA") violations.

8.    Fifth, the DOE arbitrarily and capriciously evaluated HTDA's Management Approach.

9.    Sixth, H2C does not appear to be registered in the System for Award Management ("SAM"), rendering H2C ineligible for contract award.

10.    Finally, the DOE conducted a flawed best value tradeoff, irrationally concluding that H2C's proposal offered the best value based on an unreasonable evaluation and comparison of the H2C and HTDA proposals.

11.    These errors, individually and together, competitively prejudiced HTDA and resulted in the DOE's arbitrary and capricious award of the ITDC to H2C.

## PARTIES

12.    Plaintiff HTDA is a Delaware limited liability company comprised of Atkins Nuclear Secured, LLC, Jacobs Technology, Inc., and Westinghouse Government Services LLC. Plaintiff's headquarters and principal place of business is 545 Oak Ridge Turnpike, Oak Ridge, Tennessee, 37830.

13.    Defendant is the United States, acting through the Environmental Management Consolidated Business Center, U.S. Department of Energy.  Defendant has offices at 550 Main Street, Room 7-010, Cincinnati, Ohio, 54202.

14.    The awardee is H2C of Lynchburg, Virginia.  According to public announcements, H2C is a joint venture of BWXT Technical Services Group, Inc., Amentum Environment & Energy, Inc., and Fluor Federal Services, Inc.

## JURISDICTION

15.    This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b), because it is "an action by an interested party objecting … to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

16.    HTDA has standing as an interested party because it is an actual offeror that submitted a timely proposal for the subject procurement, and the award of the ITDC to H2C affects HTDA's direct economic interests.  But for the errors in the DOE's procurement process, HTDA would have had a substantial chance of award.

## FACTUAL BACKGROUND

17.    The ITDC is an IDIQ Contract with a $45 billion maximum value over its 10-year ordering period.  Through the contract, DOE will obtain solutions for the safe, accelerated clean-up of high-risk waste to reduce environmental liabilities and protect human health and the environment.  The ITDC contemplates the award of both Cost Reimbursement and Fixed Price task orders.

## I.    Evaluation Criteria

18.    The RFP called for a best-value source selection based on "a comparative assessment of proposals against all evaluation factors in the solicitation," with award to the offeror "whose proposal is determined to be the best value to the Government."

19.    The RFP identified four evaluation factors: (1) Key Personnel, (2) Past Performance, (3) Management Approach, and (4) Cost and Fee/Profit.  Factor 1, Key Personnel, was more important than Factor 2, Past Performance, and Factor 3, Management Approach.

Factors 2 and 3 were considered equal in importance. Factors 1-3, when combined, were significantly more important than the total evaluated price.

20.    Factors 1-3 were to be adjectivally rated. The RFP did not provide the adjectival ratings or their definitions. Factor 4, Cost and Fee/Profit, was only to be considered in the overall evaluation of proposals in determining the best value to the Government. The DOE did not intend to provide a rating or score for Factor 4.

*Factor 1:  Key Personnel*

21.    Factor 1, Key Personnel, evaluated the "proposed required Program Manager and Operations Manager (required key personnel) and up to three additional non-required key personnel" as well as the "Offeror's rational for selecting the proposed non-required key personnel and why the positions are essential to the successful performance of the entire master IDIQ [Performance Work Statement ("PWS")]." The Program Manager and Operations Manager individually were considered more important than the non-required key personnel individually.

22.    The DOE was to evaluate the individuals proposed as key personnel to determine the "degree to which they are qualified and suitable for the proposed position in relation to the work for which they are proposed to perform and areas of responsibility." The qualifications and suitability of the individual key personnel were to be evaluated on the following:

> (1) Experience.  The key personnel individually will be evaluated on their DOE, commercial, and/or other Government experience in performing work similar to the work to be performed in their proposed position, including leadership and other accomplishments, with emphasis on production operations type work.

> (2) Education.  The key personnel individually will be evaluated on their education, specialized training, certifications, and licenses that support the suitability for the proposed position.

(3) References.  DOE may contact any or all of the references and other sources of information not provided by the Offeror, to verify the accuracy of the information contained in the resume and to further assess the qualifications and suitability proposed key personnel.

23.    The DOE also was to conduct oral interviews with each key personnel to evaluate the individual's qualifications, suitability, and leadership capability.

**Factor 2:  Past Performance**

24.    Under Factor 2, Past Performance, the DOE was to evaluate "relevant and recent past performance information obtained for the Offeror [(to include all members of a teaming arrangement)] performing work similar in scope, size and complexity to the portion of the Master IDIQ PWS that each entity is proposed to perform."

25.    The RFP defined similar scope, size, and complexity as follows:

Scope – type of work (e.g., work as identified in the Master IDIQ PWS, including similar work of a non-nuclear nature and/or similar non-DOE work such as operating facilities with significant chemical/industrial hazards comparable to typical commercial chemical industry facilities regulated by the Occupational Safety and Health Administration and in some cases using the Occupational Safety and Health Administration's Process Safety Management Framework);

Size – dollar value (approximate average annual value in relation to the proposed work; annual contract value of approximately $400M for evaluation purposes);

Complexity – Performance challenges (e.g., operating a first of a kind facility; operating Hazard Category 2 or 3 facilities; overcoming barriers to maintaining operating production levels; overcoming issues related to maintenance and obsolescence; subcontractor management; management of large complex contracts in highly regulated industries; management of complex Contractor Human resource Management (CHRM) requirements; and successful partnership with the Government, Client, and Regulators.

26. The DOE was to evaluate recent past performance information for contracts currently being performed or with a period of performance end date within the last four years from the original solicitation date. The DOE indicated more recent past performance information may be given greater consideration.

27. Teaming Subcontractors were to be similarly evaluated on the assessment of the past performance information for work similar in scope, size, and complexity to that proposed to be performed by the Teaming Subcontractor.

28. For newly formed entities and predecessor companies, the RFP permitted the evaluation of past performance to be based on the past performance of its "parent organization(s), member organizations in a joint venture, limited liability company, or other similar or affiliated companies," so long as the proposal demonstrates the resources of the parent, member, or affiliate will be provided or relied upon in contract performance.

29. The RFP informed offerors that they may be evaluated on "safety statistics (OSHA, Days Away, Restricted or Transferred (DART) and Total Recordable Case (TRC)) and DOE enforcement actions and/or worker safety and health, nuclear safety, and/or classified information security incidents or notifications posted to the DOE Office of Enterprise Assessments website [] and corrective actions taken to resolve those problems."

30. The DOE also reserved the right to consider past performance information from sources other than those provided by an offeror, including commercial and government clients, government records, regulatory agencies, and government databases.

### Factor 3:  Management Approach

31.    Under Factor 3, Management Approach, the DOE was to evaluate the Offeror's Contract Transition Approach, Management Approach, and Small Business Participation.

32.    With respect to the Contract Transition Approach, the DOE was to evaluate the Offeror's "approach to achieve the Contract Transition Task Order requirements, including Contractor Human Resource Management (CHRM) requirements in Section H, for the safe, effective, and efficient transfer of responsibility for execution of the Master IDIQ Contract with little or no disruption to ongoing operations."

33.    With respect to the Management Approach, the DOE was to evaluate the Offeror's management approach to "effectively negotiate, manage, implement and execute multiple simultaneously performed Task Orders," "integrate and enhance OSHA safety culture of comparable typical commercial chemical industry with the existing nuclear facility ISMS," "integrate tank farm and WTP operations," identify solutions for the disposition of tank waste, interface with other site contractors, and partner with the Agency and regulators.

34.    For Small Business Participation, the DOE was to evaluate the offeror's approach to "meet or exceed the small business subcontracting goal of 18 percent of the cumulative value of Task orders, including subcontracting of meaningful work scope."

### Factor 4:  Cost and Fee/Profit

35.    Under Factor 4, Cost and Fee/Profit, the DOE was to evaluate the Cost and Fee/Profit Proposal for cost realism and price reasonableness in accordance with FAR 15.404-1 and FAR 15.402(a).  The DOE did not intend to rate or score the offeror's Cost and Fee/Profit proposal.

36.    For best value purposes, the total evaluated price was to be the total of the proposed fee/profit for a one-year period, proposed costs for key personnel, proposed costs for the fiscal year 2023 fully burdened labor rates (excluding fee), and realistic costs for the Transition Task Order period.

***Best Value Tradeoff***

37.    In making its best value determination, the DOE stated that it was "more concerned with obtaining a superior Technical and Management Proposal than making an award at the lowest evaluated price."  However, the DOE would not make award at a price premium "disproportionate to the benefits associated with the evaluated superiority of one Offeror's Technical and Management Proposal over another."

## II.    <u>Award and Evaluation Results</u>

38.    On April 13, 2023, the DOE notified HTDA that the Agency had awarded the ITDC to H2C.

39.    HTDA sought information on H2C in SAM, the official registry of federal offerors and contractors.  As of this date, an entity search in SAM.gov for Hanford Tank Waste Operations & Closure, LLC does not return any results, among either the active or inactive SAM profiles. This suggests H2C was not registered in SAM at the time it submitted its proposal for this competition and/or did not maintain continual registration until time of award, in violation of FAR 52.204-7, which was incorporated into the RFP.

40.    HTDA timely requested a debriefing, which the DOE provided virtually on April 26, 2023.  The DOE provided the following summary of HTDA's evaluation as compared to H2C's evaluation:

| Vol. II Technical and Management Evaluation Factors | | H2C |
|---|---|---|
| 1. Key Personnel | | Outstanding |
| 2. Past Performance | | Good |
| 3. Management Approach | | Good |
| Vol. III Cost and Fee/Profit Evaluation | | H2C |
| Total Evaluated Price | | $635,083,485 |

*The relative order of importance of the technical evaluation factor is represented visually above by indenture.*

41.    In connection with the required debriefing, the DOE provided the adjectival ratings and definitions it used for evaluating Factors 1-3.

42.    For Factor 1, Key Personnel, and Factor 3, Management Approach, the RFP contemplated adjectival ratings of Outstanding, Good, Satisfactory, Marginal, or Unsatisfactory.

      a.    Relevant here, an Outstanding rating was reserved for proposals that demonstrate "an outstanding understanding of the contract requirements and a highly effective approach to perform the work that results in a very high probability of successful contract performance with a high likelihood that performance objectives will be significantly exceeded." Outstanding proposals also "exhibit very limited risk, significant strengths and/or strengths, and no significant weaknesses and/or few if any weaknesses."

      b.    A Good proposal demonstrates "a good understanding of the contract requirements, and an effective approach to perform the work that results in high probability of successful contract performance with a likelihood that performance objectives will be exceeded." Good proposals "exhibit limited risk, significant strengths and/or strengths, and few, if any significant weaknesses and/or weaknesses."

c.  A Satisfactory proposal demonstrates "a satisfactory understanding of the contract requirements, and an acceptable approach to perform the work that results in a likelihood of successful contract performance which will meet performance objectives."  Satisfactory proposals "exhibit some risk, significant strengths and/or strengths, and offsetting significant weaknesses and/or weaknesses."

43.  In assigning these adjectival ratings, the DOE was to consider any strengths, weaknesses, and deficiencies in the offeror's proposal.

a.  A Significant Strength is an "attribute that appreciably increases the probability of successful contract performance."

b.  A Strength is an "attribute in the proposal that increases the probability of successful contract performance."

c.  A Weakness is a "flaw in the proposal that increases the risk of unsuccessful contract performance."

d.  A Deficiency is a "flaw that appreciably increases the risk of unsuccessful contract performance."

44.  For Factor 2, Past Performance, the DOE was to assign relevancy ratings of Very Relevant, Relevant, or Not Relevant, with the rating assigned dependent on the extent of similarity in size, scope, and complexity between the reference contract and the ITDC.  In addition, the DOE was to assign adjectival ratings of Outstanding, Good, Satisfactory, Marginal, Unsatisfactory, or Neutral based on the DOE's expectation of the level of performance and associated risk.

**_Factor 1 Evaluation_**

45.  The DOE rated HTDA ███████ under Factor 1, Key Personnel███████ ██████████████ The Selection Evaluation Board ("SEB") evaluated the required Program

11

Manager and Operations Manager a ███████████████████████████████████

███████████████████████████████████████████████████████████

████████ The DOE assessed the following ratings for HTDA's proposed Key Personnel:

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

46.    Overall, the SEB concluded that HTDA's proposed key personnel ████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

*Factor 2 Evaluation*

47.    Under Factor 2, Past Performance, the SEB assessed HTDA a ████████████

████████████████████████

48.    Of the past performance references ███████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

49.    The SEB assessed ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

12

███████████████████████████████████████████████████
███████████████████████████████████████

50.    The SEB also assessed ratings for the ████████████████████████

████████████████████████████████████████████████████████

████████████  ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

51.    Overall, the SEB found ███████████████████████████████████

████████████████████████████████████████████████████████

**Factor 3 Evaluation**

52.    Under Factor 3, Management Approach, the SEB assessed HTDA a ████████

████████████████████████████████████████

53.    In evaluating HTDA's Contract Transition Approach, Management Approach, and Small Business Participation, the SEB identified ██████████████████████████. *Id.*

54.    The SEB awarded HTDA ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

55.    The SEB ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

13

████████████████████████████████████████████████

████████████████████████████████████████████

56.     The SEB ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

*Factor 4 Evaluation*

57.     In evaluating HTDA's Cost and Fee/Profit Proposal under Factor 4, the SEB

determined███████████████████████████████████████████████████████

███████████████

*Best Value Decision*

58.     Although ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

59.     For Key Personnel, the SSA found that ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

60.     For Management Approach, the SSA found that ███████████████████

████████████████████████████████████████████

61.     ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

14

██████████████████████████████████████████

███████████████████████████████████████████

**COUNT ONE**
**Arbitrary and Capricious Evaluation of Plaintiff's Proposal under Factor 1, Key Personnel**

62.     HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

63.     The DOE assigned ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

*Operations Manager*

64.     The Agency unreasonably assigned ███████████ (HTDA's proposed Operations Manager) ████████████████████

65.     The Agency defined a "Significant Strength" as "[a]n attribute that appreciably increases the probability of successful contract performance."  In contrast, the Agency defined a "Strength" as an attribute in the proposal that merely increases the probability of successful contract performance.

66.     The Agency's evaluation noted:





(emphasis added).

67.    In considering ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

68.    Likewise, the SEB found ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

(emphasis added).

69.    The SEB found █████████████████████████████████

████████████████████████████████████████

70.    █████████████████████████████████████████████████

████████████████████████████████████  █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

71.    The Agency also found that ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████

72.    In other words, the Agency concluded █████████████████

█████████████████████████████████

73.    Nevertheless, the SEB also noted that ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████  (emphasis added).  For this reason – and

apparently this reason alone – the Agency evaluated ██████████████████████

██████████████████

17

████████████████████████████████████████████

███████████████████████████████████████████

74. The Agency's conclusion that █████████████████████████

███████████████████████████████████████████ ██████████████

████████████████████████████████████████████████████████

████████████████████████

75. In fact, when asked during the debriefing about the SEB's conclusion that ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ ██ ███ ████ ████ █████ █ ████ █ ████ ███ ███ ████████

████████████████████████████████████████████████

76. But for this evaluation error, the Agency would have concluded ████████

████████████████████████████████████████████████████████

████████████ ██████████████████████████

███████████████

77. The Agency unreasonably ███████████████████████████████

████████████████████████████

78. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

79. The Agency's evaluation noted:

█████████████████████████████████████████████

████████████████████████████████████████



(emphasis added).

80.    The Agency also reviewed ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

81.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████

82.    Moreover, the Agency ████████████████████

███████████████████████    ███████████████████

████████████████████████████████████

83.    The SEB also determined ████████████████████

███████████████████████████████████████

███████████████████████████

84.    Thus, overall, the SEB found ████████████████

███████████████████████████████████████

██████████████████████████

85.    Nevertheless, the SEB ████████████████████████

███████████████████████████████████████

█████████████    █████████████████████████

███████████████████████████████████████

██████████████████████████████

86.    During the debriefing, ████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████    Unable to provide a rational response, the Agency ignored the substance of the

question and responded as follows:

███████████████████████████████████

████████████████████████████████



87.    Had the Agency reasonably ████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

88.    Moreover, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

89.    HTDA was prejudiced by the Agency's failure to credit HTDA's ████████

███████████████████████████████████████████. If not for these

errors, ██████████████████████████████████████████████

### COUNT TWO
### Arbitrary and Capricious Evaluation of Awardee's Proposal under Factor 1, Key Personnel

90.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth

herein.

91.    The DOE improperly assessed H2C an Outstanding rating under Factor 1 and

misevaluated several of its key personnel.

92.     The Solicitation required the DOE to evaluate "the degree to which [proposed key personnel] are qualified and suitable for the proposed position in relation to the work for which they are proposed to perform and areas of responsibility."  As part of this evaluation, the Agency was to consider the proposed key personnel's "experience in performing **work similar to the work to be performed** in their proposed position[.]"

93.     The SSA found ███████████████████████████████████ ███████.  Specifically, the SSA concluded, ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████

94.     To reach this conclusion, the SSA must have awarded significant strengths to some of H2C's less deserving key personnel.  As discussed below, the experience of H2C's proposed Program Manager, ESH&Q Manager, and Business Manager should have been evaluated as weaknesses or significant weaknesses rather than as strengths or significant strengths.  The Agency's unreasonable evaluation prejudiced HTDA, ██████████████████████████ ████████████████████████ under Factor 1, Key Personnel, the most important factor.

***Program Manager***

95.     According to HTDA's industry sources, H2C proposed ██████████████ to serve as its Program Manager.

96.     ██████████████ last served in a Program Manager role approximately 7 years ago, when she was the President and CEO of Savannah River Nuclear Solutions ("SRNS") from May 2014 to September 2016.  She has not managed a major DOE project since she retired and stepped

██████████████████████████████████████
███████████████████████████████

down from that role.  In other words, ██████████ lacks any recent and relevant work experience *over the past six years*.

97.    Prior to her tenure at SRNS and subsequent retirement in 2016, ██████████ was the President and Project Manager for Washington Closure Hanford, LLC ("WCH"), at the Hanford Site in Richland, Washington, a position she also retired from in 2013.  That work, however, was in support of a decommissioning and demolition ("D&D") contract, which materially differed in scope from the ITDC and is not relevant to the work she is proposed to perform as Program Manager for ITDC.

98.    Furthermore, ██████████'s recent leadership positions lack any high-level waste tank experience, or experience in operating technically complex high-level waste processing facilities, a required part of the ITDC.  And while she has participated on boards for various projects, she has not led any project or site.  Given her six-year-long absence from the industry, ██████████ lacks the experience and leadership needed to succeed in her proposed position. Furthermore, she is unlikely to remain on the job long, which poses another risk to contract performance.

99.    By any objective measure, ██████████'s lack of recent and relevant work experience should have resulted in H2C receiving a Weakness or Significant Weakness for its Program Manager, one of the two most important key personnel, downgrading H2C's overall Key Personnel rating from Outstanding to merely Good or Satisfactory.  This, in turn, would have significantly diminished H2C's chance of award, given Factor 1 was the most important evaluation factor.  In any event, a weakness of this nature in the most important key personnel position is not reasonably consistent with the Agency's determination that ██████████████████ ████████████████████

23

*ESH&Q Manager*

100.    According to HTDA's industry sources, H2C proposed ▮▮▮▮▮▮▮ in an ESH&Q Manager role.  In this role, ▮▮▮▮▮▮ would be responsible for specifically overseeing and implementing safety and health programs and systems under the ITDC.

101.    Like ▮▮▮▮▮, ▮▮▮▮▮▮ is a retiree.  She worked on the Fluor Idaho Cleanup Project until December 2021 and then began her retirement.

102.    ▮▮▮▮▮▮'s work on the Fluor Idaho Cleanup Project coincided with significant safety issues during performance.  For example, a report issued on October 2, 2018, summarized a series of health, safety, and environmental incidents at the Fluor Idaho Cleanup Project and Idaho National Laboratory Site (where H2C's member, Fluor, operated) from January 2018 to April 2018.  After ▮▮▮▮▮▮'s arrival in 2018, the safety problems remained an area of concern and did not materially improve.  This fact should be reflected in the CPARs for that contract.  And it is publicly reflected in DOE Office of the Inspector General Audit Report DOE-OIG-20-42 (May 2020), which noted numerous quality performance problems that directly bear on ▮▮▮▮▮▮'s performance of work similar to her proposed role for H2C.  In addition to her lack of experience performing the ESH&Q role at high-level waste tanks and high-level waste processing facilities, the Agency should have recognized her Fluor Idaho Cleanup Project safety issues as negative past experience and a flaw in H2C's proposal that increased the risk of unsuccessful contract performance.

103.    Similarly, prior to her support of the Fluor Idaho Cleanup Project, ▮▮▮▮▮▮ served in an ESH&Q role for SRNS on SRNS's Savannah River Site Contract (May 2016 – November 2018).  Her time on this contract also coincided with significant safety issues during performance.  Specifically, the DOE reviewed the SRNS incidents of security concern ("IOSC")

program at the Savannah River Site because of continued noncompliance with requirements for timely notification and closure of Category A IOSCs reported by SRNS. The DOE Office of Enforcement reviewed 21 Category A IOSCs reported by SRNS in fiscal years 2016 through 2018, finding that 8 of the 21 IOSC notifications exceeded the 5-day notification period and 16 of the 21 IOSCs significantly exceeded the 90-day closure period (*i.e.*, one to two years in most cases). The DOE sent SRNS an enforcement letter on August 20, 2019, documenting these concerns.

104.    Had the Agency reasonably reviewed ██████████'s prior experience, it would have recognized this trend of safety incidents and security violations, which should have increased the risk of unsuccessful contract performance by H2C, resulting in a weakness under the key personnel factor.

### *Business Manager*

105.    According to HTDA's industry sources, H2C proposed ██████████ in a Business Manager role.

106.    ██████████ has no experience similar to the span of control and dollar value of the Hanford ITDC. ██████████'s resume may claim that he oversaw the entire CH2M portfolio, but he had no direct reports, and it was not in-the-field experience. Also, he has no end state contracting or Hanford experience.

107.    ██████████ is currently the Vice President of Business Services and Chief Financial Officer of CH2M Hill BWX Technologies, Inc. West Valley ("CHBWV"). He has no experience managing business for an end state contract and or one similar in size to this procurement.

108.    ██████████ was responsible for reporting project finances while part of the CH2M corporate organization, but had no direct project, contract, or subsidiary performance or command and control responsibilities. In this position, ██████████ directly supervised only one employee.

Accordingly, he had no direct project, contract, or subsidiary performance or command and control responsibilities. Although ███████'s title may have been Business Manager for CH2M corporate, he was not in the field with responsibility for procurement or project controls, which is a further dissimilarity to the role for which he was proposed.

109.    The only contract with which ███████ is associated through CHBWV is the West Valley Demonstration Project, which is funded at only $95 million per year with a fixed fee ceiling based on completion of the main plant—far smaller than the ITDC. It is, moreover, a D&D contract with a workforce of only 290 employees. Thus, it is not similar in size, scope, or complexity to the present procurement.

110.    ███████'s lack of relevant work experience on contracts with similar size, scope, and complexity should have resulted in H2C receiving a Weakness. This would have downgraded H2C's overall Key Personnel rating and ████████████████████████████████████ ████████████████████████.

### COUNT THREE
### Arbitrary and Capricious Evaluation of Plaintiff's Past Performance under Factor 2, Past Performance

111.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

112.    The DOE assessed HTDA a ███████ under Factor 2, Past Performance. However, a review of HTDA's individual assessments confirm the Agency failed to evaluate HTDA's past performance consistent with the Solicitation. Had the Agency performed a rational evaluation, HTDA would have been ████████████████████████.



██████████████

113.  The SEB evaluated ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

114.  ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

115.  Moreover, it is apparent that the SEB would ███████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

116.  Despite acknowledging that ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

117.  It is particularly noteworthy that ████████████████████████

██████████████████████████████████████████████████

████████████

27

████████████████████████████████████████

███████████████████████████████████████

118.    For example, ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

119.    ██  ██  ████  ███  ███  ██████  ████  ██████  ████  ██  ████  ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████

120.    Had the SEB properly evaluated the ████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████

121.    The SEB evaluated █████████████████████████████

████████████████████████████████████████████████

██████████████

122.    In making its relevancy determination, the SEB determined ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

123.    For example, ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

28

████████████████████████████████

██████████████████████████████



124.    The SEB also found that the ███████████████████████████████

125.    A proper evaluation of the ██████████████████████████████████

126.    Not only did the SEB misevaluate the ████████████████████████

███████████████████████████████████████████████████████

██████████

127.    Although the SEB acknowledged that ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

128.    The SEB's reliance on ████████████████████████████████████████

███████████████████████████████████████████ contrary to the Solicitation's stated

evaluation methodology.

129.    Had the SEB properly evaluated the ████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

130.    The SEB evaluated ████████████████████████████████████████

███████████████████████████████████████████████████████

██████████

131.    Despite ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

132.    The SEB also reviewed ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

133.    In summarizing its evaluation of the ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

134.    It is clear the SEB ████████████████████████████

████████████████████████████    ████████████████

████████████████████████████████    ██████████████

███████████████████████████████████████████████

██████████

135.    Neither the RFP nor the FAR provides that ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

31

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

136.    The SEB also concludes that the █████████████████████████

███████████████████████     █████████████████████████████████

███████████████████████████████.   The SEB has provided no basis for this

conclusion.

137.    Furthermore, the SEB █████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████     ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████

138.    Moreover, ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

139. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.

140. Prior ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ ████ ████ ███ ███████ ████ ███ ██ ████

███████

141.    The SEB was required to consider this recent past performance information as it was "too close at hand to ignore."

142.    The SEB's failure to consider and give greater weight to this recent past performance information is yet another example of the SEB's failure to follow the stated evaluation methodology.

███████

143.    The Agency similarly ████████████████████

████████ ██████ █ ████ ██ ███████████ ███ ██ ████

████████████████████████████████████████████████

█████████████████████████████

144.   In fact, the ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

145.   Moreover, ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

146.   It is also worth contrasting ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████

147.   It was arbitrary and capricious for the Agency not to have accorded the ████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████

148.   The SEB evaluated ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

149.   The SEB noted ██████████████████████████████████████

███████████████████████████████████████████████████████

34

███████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████

150.    The SEB specifically noted that, ██████████████████████████

███████████████████████████████████████████.

151.    ███████████████████████████████████████████████

152.    ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

153.    ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

154.    Had the DOE reasonably evaluated HTDA's past performance, it would have

recognized that ████████████████████████████████████████████████████

███████████████████████████████████████████

155.    But for the DOE's arbitrary and capricious failure to evaluate HTDA's past

performance consistent with the terms of the Solicitation, ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

## COUNT FOUR
## Arbitrary and Capricious Evaluation of Awardee's Past Performance under Factor 2, Past Performance

156.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

157.    ████████ H2C received a Good rating under Factor 2, Past Performance. However, public records confirm numerous performance and safety issues have plagued the H2C team members (including the H2C's lead joint venture member) over the last several years.  Had the Agency considered such information adequately, it would have downgraded H2C's overall Past Performance rating.

158.    For example, the Waste Isolation Pilot Plant ("WIPP") Contract, Contract No. DEEM0001971, performed from 2012-2022 by Nuclear Waste Partnership ("NWP"), an Amentum-led entity with partner BWXT, has a history of safety failures that should have alarmed DOE evaluators and warranted a Weakness or Significant Weakness in connection with two of H2C's three joint venture members.

159.    On May 1, 2020, the Defense Nuclear Facilities Board issued its report for April 2020 in connection with the WIPP contract.  The report noted that the Carlsbad Field Office was evaluating a potential inadequacy in the safety analysis related to the clogging of high efficiency particulate air filters.  The report also indicates that NWP reported the discovery of an uncontrolled hazardous energy source when an electrician cut an energized wire, resulting in a performance degradation in a safety-significant automatic fire suppression system of an underground waste transporter vehicle.

160.    In January 2022, DOE awarded NWP only 67% of the award fee available for FY2021.  The award fee score card assessed NWP merely Satisfactory ratings for Schedule

36

Compliance and Cost Control compliance. The DOE noted several areas requiring improvement, including procedural quality and compliance, work planning/work control processes, configuration management and design control, and corrective actions to prevent further injuries.

161. On November 14, 2022, the DOE Office of Enterprise Assessment, Office of Enforcement, issued a Preliminary Notice of Violation to NWP for violations of DOE's Worker Safety and Health program requirements. The violation notice concerned a crush injury to the right hand of a worker during post maintenance component testing on May 25, 2021.

162. These incidents range in severity and demonstrate a pattern of safety issues across the WIPP contract that the SEB was obligated to consider in its evaluation of the awardee.

163. The SEB also should have considered alarmingly poor performance on contracts performed by Nuclear Fuel Services, Inc. ("NFS"), a subsidiary of BWXT. Over the last several years, NFS has experienced a number of similar performance and safety issues, which have been well-documented by the NRC.

164. NRC Report No. 70-143/2020-003, dated October 27, 2020, identifies an incident that occurred on August 31, 2020, where an operator failed to follow standard operating procedures. This failure resulted in a spill of special nuclear material from a material storage vessel, an unplanned contamination in a process area, and accidental worker exposure to licensed material.

165. The NRC also launched an inspection at NFS in Erwin, Tennessee in 2022 after a loss of safety controls. NFS reported that two of its drains had become obstructed that could potentially increase the chances of an accident.

166. Finally, the SEB should have considered contracts performed by BWXT Nuclear Operations Group, Inc. ("NOG"), another affiliate of BWXT, whose resources and assets H2C

almost certainly intends to leverage in its proposed performance of the ITDC.  HTDA understands that other BWXT entities regularly rely on reachback to BWXT NOG.

167.    Like its affiliate, BWXT NOG has experienced significant safety issues, ***including a recent fatality*** at its Lynchburg, Virginia facility.  The fatality was widely reported, was a matter of high-profile concern within the DOE, the NRC, and industry, and certainly was known to the Agency's evaluators and/or source selection team.

168.    Specifically, on June 19, 2020, a BWXT NOG employee died in a flash fire in the Lynchburg plant's supercompactor facility.  As widely reported, the "fuel for the deadly fire, sparked by exposed wires, was 25 gallons of isopropyl alcohol squeezed from a pair of 55-gallon drums that the powerful compactor had crushed into small pucks for disposal."  In other words, despite operating in a hazardous and highly regulated environment with clear rules designed to promote safety and welfare, BWXT NOG experienced a fatality due to its failure to adhere to safety controls.

169.    On June 6, 2022, the NRC issued Report No. 07000027/2021006, which identified five violations at the Lynchburg facility involving failures to:  "(1) implement the established Fire Protection Program and work area spill response requirements to control flammable liquids necessary to prevent fires from occurring; (2) minimize the amount of alcohol present in drums compacted for disposal; (3) take the necessary precautions to control ignition sources and prevent the ignition of flammable vapors; (4) maintain process safety information in the Integrated Safety Analysis that was complete and accurate in all material respects; (5) assure the adequate evaluation of the change to the supercompactor prior to implementing the change." These violations are particularly notable given the earlier fatality that occurred in 2020, which was itself a direct result of the presence of isopropyl alcohol in the supercompactor.

170.    The severity of these events is reflective of the overall poor operating culture and safety managements systems associated with the BWXT family of companies, which share corporate resources and assets and have significant overlap.  The SEB had an affirmative duty to consider these significant safety incidents in connection with its evaluation of H2C and its lead joint venturer.  This deeply problematic past performance record should have significantly reduced H2C's past performance rating.

171.    To the extent the SEB did not review the WIPP contract or any of the contracts associated with NFS or NOG, this was itself arbitrary and capricious, as all of this information was too close at hand to ignore.

172.    Had the DOE reasonably evaluated H2C's past performance considering these safety issues, it would have downgraded H2C's past performance rating from Good to no better than Satisfactory—if not worse.

173.    But for the DOE's arbitrary and capricious failure to evaluate H2C's past performance consistent with the terms of the Solicitation, HTDA would have been found superior to H2C under this factor.  Individually or in conjunction with the other evaluation errors, this arbitrary and capricious evaluation deprived HTDA of a substantial chance of receiving the award.

**COUNT FIVE**
**Arbitrary and Capricious Evaluation of Plaintiff's Management Approach**

174.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

175.    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

176.    Under Factor 3, Management Approach, the DOE was to evaluate proposals in three areas: Contract Transition Approach, Management Approach (as one area within the identically named factor), and Small Business Participation.  In its evaluation, the Agency found

177.    For the Management Approach area, the DOE evaluated

██████████████████████████████████████████████    ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

178.    ████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████

179.    ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

180.    For example, ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████    █████████████████████████████

███████████████████████████████████████████████████████

███ ██ ████ ███ █ ████ █████ █ ███ ████ ███ ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

41

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████████

████████

181.    The Agency failed to acknowledge additional ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████  █████████████████████

█████████████████████████████████████████████████

████████████████████

182.    With respect to the ██████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████  █████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

183.    Although the Agency ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

184.    Thus, HTDA ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

## COUNT SIX
### Failure to Register in SAM

185.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

186.    H2C does not appear to be registered in SAM, which is the official registry for federal offerors and contractors.  Under most competed procurements (including this one) other than very low-value contracts, failure to have been registered in SAM at the time of proposal submission precludes award to an offeror.

███████████████████████████████████████

████████████████████████████████

187.    The Solicitation incorporated the provision at FAR 52.204-7, which requires offerors "to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award."  This requirement is further reflected in FAR 4.1102(a), which provides: "Offerors and quoters are required to be registered in SAM at the time an offer or quotation is submitted in order to comply with the annual representations and certifications requirements except for [circumstances not applicable here]."

188.    As of this date, an entity search in SAM for Hanford Tank Waste Operations & Closure LLC does not return any results, among either the active or inactive SAM profiles.  This suggests H2C was not registered in SAM at the time it submitted its proposal for this competition and/or did not maintain continual registration until time of award, in violation of FAR 52.204-7.  As the Court held in its recent decision in *Thalle/Nicholson Joint Venture v. United States*, 164 Fed. Cl. 224 (2023), if an offeror was not, in fact, registered in SAM at proposal submission, there is no way subsequently to cure that defect.

## COUNT SEVEN
## Arbitrary and Capricious Best Value Decision

189.    HTDA incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

190.    DOE's best value source selection decision is flawed because of the numerous prejudicial errors described above and evident in DOE's evaluation materials.

191.    Moreover, ███████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

192.    Had the Agency meaningfully compared HTDA's and H2C's ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████

193.    Similarly, had the Agency meaningfully compared the offerors' ██████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████

194.    Finally, had the Agency meaningfully compared the offerors' █████████

███████████████████████████████████████████████████████████████

███████████████████████████

195.    But for these erroneous evaluation judgments, DOE would have concluded that HTDA presented the best value to the Government as a technically superior offeror.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, HTDA requests that the Court enter judgment for Plaintiff and further requests that the Court:

A.    Declare the Agency's award of the contract to H2C arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law;

B.    Permanently enjoin performance of the awarded contract;

C.    Direct the Agency to re-evaluate proposals in accordance with the terms of the RFP; and

D.    Grant such other relief as the Court deems just and proper.

████████████████████████████████████████████████████████

███████████████████████████████████████

Dated: May 8, 2023                    Respectfully submitted,


                                      By: _____
                                          Kevin P. Mullen
                                          Morrison & Foerster LLP
                                          2100 L St. NW
                                          Washington, DC  20037
                                          Telephone: 202.887.1560
                                          Facsimile: 202.887.0763

                                          *Attorney of Record for Plaintiff*
                                          *Hanford Tank Disposition Alliance, LLC*

*Of Counsel:*

Sandeep N. Nandivada
James A. Tucker
Caitlin C. Crujido
Victoria Dalcourt Angle
Morrison & Foerster LLP
2100 L St. NW
Washington, DC  20037

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this <u>Sealed Complaint</u> was served this day on all parties via the Court's electronic case filing system.

Dated:      May 8, 2023                    By:  _____

Kevin P. Mullen
Morrison & Foerster LLP
2100 L St. NW
Washington, DC  20037
Telephone: 202.887.1560
Facsimile: 202.887.0763

*Attorney of Record for Plaintiff*
*Hanford Tank Disposition Alliance, LLC*